Murchison & Manhein and David P. Murray, all of Jackson, Tenn., and Joe C. Davis, of Lexington, Tenn., for plaintiff.

W. G. Timberlake and Barham & Heiskell, all of Jackson, Tenn., and Winchester & Bearman, of Memphis, Tenn., for defendant.

## TAYLOR v. McCOWAT–MERCER PRINTING CO.
### No. 4.

District Court, W. D. Tennessee, E. D.
June 13, 1939.

MARTIN, District Judge.

In this tort action for death by wrongful act, the administrator was awarded $7,500 damages by jury verdict; and judgment thereon has been entered.

A motion for a new trial is now presented, embracing also a motion, under Rule 50(b), Civil Procedure, 28 U.S.C.A. following section 723c, to set aside the jury verdict and judgment, and to grant defendant's motion for a directed verdict.

The substantial questions are: (1) Did the court properly permit the jury to decide whether the deceased was an invitee, or a licensee, in the defendant company's building when he met his fatal injuries; (2) and, if so, were the instructions to the jury and the rulings on the special requests correct?

The defendant contends that, considering all the evidence in the light most favorable to the plaintiff, his intestate was, as matter of law, a mere licensee, toward whom the defendant owed only the duty not to injure him willfully and wantonly.

The record reveals that McCowat-Mercer Printing Company operated a printing plant on the fourth floor of an office building, owned by it, in the business district of Jackson, Tennessee. The defendant leased the other floors of the building to tenants engaged in various business and professional activities. During normal business hours, an elevator was operated in the building by a girl employee. After six o'clock P. M., a regular night-shift employee of the printing company, E. P. Collier, habitually used the elevator, as did other employees when engaged in night work. Collier customarily worked from five o'clock in the afternoon until one o'clock in the morning.

On his way to work on April 18, 1938, Collier dropped into a small down-town restaurant, the Dixie Castle, and placed an order for food and drink to be delivered to him on the fourth floor of defendant's building at nine o'clock that night.

Shortly after nine o'clock, the Superintendent of the printing plant of the defendant company, J. C. Holcomb, at the request of Collier, called in person at the Dixie Castle Restaurant to remind the proprietor that Collier's order had not been filled, and to request the delivery of the consumable merchandise.

Soon thereafter, the deceased, Floyd Taylor, who was twenty years old and was employed as a delivery boy by the Dixie Castle, was dispatched with the food and drink. His body was discovered, shortly afterwards, at the bottom of the elevator shaft in defendant's building.

There was substantial evidence of negligence on the part of an employee of defendant, in leaving the door to the elevator shaft open some five or ten minutes before Floyd Taylor entered, from the street, the vestibule of defendant's building. The jury expressly so found in answering specific questions submitted by the defendant; and the court concurs in their findings.

There was testimony that for a long time prior to the accident employees of the defendant company frequently ordered food and drink served them while they were working on the premises of their employer. It appears that Superintendent Holcomb was aware of this custom. The fact that the President of the company testified that he knew nothing of the custom is of no weight, because this gentleman admitted that he did not even know that, at the time of the accident, anyone worked at night. It might be observed from the record that the President was not a diligent official in the supervision of his company's affairs.

The proof is convincing that Holcomb, as Superintendent of the mechanical or printing plant of defendant, was the vice-principal in control of the work, insofar as the employee Collier was concerned; and the Superintendent, himself, delivered Collier's message to the Dixie Castle, to send over the food and drink which plaintiff's intestate was carrying when he met his death.

The jury found that Floyd Taylor was killed through the negligence of an employee of the defendant company, in leaving the elevator shaft open. The defendant's Superintendent in charge of its plant work that night had expressly invited Taylor upon the premises. When he made his fatal journey, the luckless young man entered the defendant's building in direct response to Collier's message, re-delivered by Superintendent Holcomb to Dixie Castle, to deliver food and drink on the fourth floor of defendant's building. The plaintiff's intestate was, therefore, an express invitee, or at least an implied one.

The Tennessee decisions govern upon the applicable substantive law (Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487), and support this conclusion.

The latest Tennessee decision in point is American National Bank v. Wolfe, Court of Appeals of Tennessee, Middle Division, 125 S.W.2d 193, in which the state Supreme Court denied certiorari on March 4, 1939. The facts were that a woman, who was not a customer of a bank, entered its banking house to obtain change for a five dollar bill. After obtaining the desired change, she sought a ladies' rest room in the bank building; and while descending a stairway, fell and was injured. She was concededly an implied invitee into the building for the purpose for which she originally entered. Whether under the facts of the case she had reasonable ground to believe that she was invited or expected to descend the stairway was

held a question for the jury. A judgment for the plaintiff was affirmed.

The Tennessee Court noted the difference in the situation found in Peebles v. Exchange Building Co., 6 Cir., 15 F.2d 335, in which the owner of an office building was held not liable to a woman, who after visiting a doctor's office as an acknowledged invitee, was injured by falling on an unlighted stairway while searching for a toilet, although she knew that the use of toilets was limited to those to whom tenants of the building furnished the means of admittance. An earlier opinion of the Western Section of the Tennessee intermediate appellate court, Rhodes v. J. R. Watkins & Co., 16 Tenn.App. 163, 165, 65 S.W.2d 1098, 1099 decided Dec. 19, 1932 is readily distinguishable from the later case under discussion, in that in the former, it appeared that the injured woman was not on the premises of the defendant company for its benefit or "in any matter connected with defendant's business." She was there for the sole purpose of seeking employment for herself.

The Tennessee Court in the American National Bank case, supra, quoted with approval 20 R.C.L. 69, Sec. 60, and cited as authorities for the statement quoted, Pauckner v. Wakem, 231 Ill. 276, 83 N.E. 202, 14 L.R.A.,N.S., 1118; Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 22 L. R.A.,N.S., 1045, 17 Ann.Cas. 576, and notes; Randolph v. Great Atlantic & Pacific Tea Co., 3 Cir., 64 F.2d 247:—"'A person who goes upon premises for business purposes is not deprived of the right to protection against defects by the fact that, at the moment of the injury, he was not engaged in the business for which he came, but was pursuing a purpose of his own.'" [125 S.W.2d 196.]

The Court quotes, also, from Robinson v. Leighton, 122 Me. 309, 119 A. 809, 30 A. L.R. 1386, 1389: "'An invitation (to enter premises) is implied when the owner, by acts or conduct, leads another to the belief that the use is in accordance with the design from which the place was adapted and allowed to be used in mutuality of interest.'"

Clapp v. LaGrill, 103 Tenn. 164, 52 S. W. 134, urged by counsel for the defendant as authority for its position on this motion, when carefully considered, seems to support the action of this court in submitting the case to the jury. In the decision cited, the court held that whether the owner of real estate adjacent to a public highway has extended an invitation to the public to enter upon and use it is a question for the jury to determine from all the facts and circumstances, and should not be assumed arbitrarily to be one way or the other in the court's charge to the jury.

In the case at bar, the jury were charged, inter alia: "If you find from a preponderance of the evidence that the defendant, McCowat-Mercer Printing Company, expressly or by implication, invited the deceased, Floyd Taylor, to come upon its premises, whether for business or for any other purpose, it would have been the duty of the defendant to exercise reasonable care not to invite the deceased into danger, and to that end it should have exercised ordinary and reasonable care and prudence to render its premises reasonably safe for his visit; and if you find from a preponderance of the evidence that the defendant failed to exercise such ordinary and reasonable care, and that such failure was the proximate cause of the alleged injuries and death of the said Floyd Taylor, then the defendant would be liable, and your verdict should be for the plaintiff."

In a number of other instructions, with respect to hypothetical findings, this court conditioned the liability of the defendant upon an express or implied invitation to the plaintiff's intestate to enter upon its premises.

Little River Railway Co. v. Dotson, 1930, 11 Tenn.App. 538, 544, cited by defendant, succinctly states the recognized Tennessee rule: "Invitation by owner or occupant of premises is implied where one goes on the premises for benefit, real or supposed, of the owner or occupant, on a matter of mutual interest or in usual course of business, or performance of some duty."

Well considered Federal Court decisions use almost identical language. Middleton v. P. Sanford Rose, 5 Cir., 213 F. 6, 10; Cross Co. v. Burns, 8 Cir., 81 F.2d 856, 858. See, also, Worsham v. Dempster, 148 Tenn. 267, 255 S.W. 52.

None of the other Tennessee cases cited by defendant's counsel, when analyzed in their real applicability, seem to gainsay any instruction, ruling, or action of this court in the instant case. Nothing gainful would seem to follow discussion of them, but mere citation should suffice. Stagner v. Craig, 159 Tenn. 511, 19 S.W. 2d 234; Westborne Coal Company v. Wil-

loughby, 133 Tenn. 257, 267, 180 S.W. 322; Memphis St. Railroad Company v. Roe, 118 Tenn. 601, 613, 102 S.W. 343; Williams v. Nashville, 106 Tenn. 533, 63 S.W. 231.

That consumption of food by an employee on the premises of the employer arises out of and in the course of the employment, within the Tennessee Workmen's Compensation Law, is recognized in Johnson Coffee Co. v. McDonald, 143 Tenn. 505, 226 S.W. 215. Coverage was found where a woman employee left her employer's building, crossed the street, procured lunch, returned, and while riding the elevator to the third floor to consume the food, was killed in attempting to get off the elevator, by falling into the shaft.

The same principle, that the personal acts of the employee which contribute to the furtherance of the master's business remotely are done in the course of the employment by necessary contemplation, was applied in another Tennessee Workmen's Compensation case, Tennessee Chemical Co. v. Smith, 145 Tenn. 532, 238 S.W. 97. The court quoted (145 Tenn. page 539, 238 S.W. page 99) from Whiting-Mead Commercial Co. v. Industrial Accident Commission of California, 178 Cal. 505, 173 P. 1105, 5 A.L.R. 1518: " 'Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment. A man must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of his work. * * * That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents. Such dangers as attend them, therefore, are incident dangers. At the same time injuries occasioned by them are accidents resulting from the employment."

The Tennessee authorities discussed, supra, amply support the action of this court in submitting the case to the jury under the instructions given. See, also, Armstrong v. Bowman, 21 Tenn.App. 673, 115 S.W.2d 229, in which the Supreme Court of Tennessee denied certiorari on April 2, 1938. There, the appellate court reversed the trial judge for directing a verdict for the defendant, because it was held to be a question for the jury to determine whether the deceased, who met his death through falling into an elevator shaft, was an employee of the lessee of the building, or a mere licensee upon the premises.

Tennessee stands in line with the weight of American authority. The Federal rule which would have been applicable here prior to Erie Railroad Co. v. Tompkins, supra, is stated in Elkton Auto Sales Corporation v. Maryland, 4 Cir., 53 F.2d 8, 12, by direct quotation of the language of Mr. Justice Harlan in Bennett v. Railroad Co., 102 U.S. 577, 580, 26 L.Ed. 235: " 'That the owner or occupant of land who, by invitation, express or implied, induces or leads others to come upon his premises, for any lawful purpose, is liable in damages to such persons—they using due care —for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public, or to those who were likely to act upon such invitation.' "

On its facts, DeHaven v. Hennessey Bros. & Evans Co., 6 Cir., 137 F. 472, is deemed authority in this circuit for submission of the case at bar to the jury.

By comparison of the facts of this case with those described in Fleischmann Malting Co. v. Mrkacek, 7 Cir., 14 F.2d 602, 604, the language there used seems applicable here: "There was evidence from which the jury might have found, as they doubtless did, that what she there did was to the mutual advantage of herself and plaintiff in error, wherefore she must be considered in the light of one invited to be there."

Among other well considered cases from state courts, which present the application of principles of law which, if similarly applied, support recovery in this case, may be cited: Purtell v. Philadelphia & Reading Coal & Iron Co., 256 Ill. 110, 99 N.E. 899, 43 L.R.A.,N.S., 193, Ann.Cas. 1913E, 335; Illinois Central R. R. Co. v. Hopkins, 200 Ill. 122, 65 N.E. 656; Plummer v. Dill, 156 Mass. 426, 31 N.E. 128, 32 Am.St.Rep. 463; Sweeney v. Old Colony R. R. Co., 10 Allen, Mass., 368, 87 Am.Dec. 644; Bustillos v. Southwestern Portland Cement Co., Tex.Com.App., 211 S.W. 929; Crumrine v. Grubbs, 165 Wash. 391, 5 P.2d 498; Gray v. Siegel-Cooper Company, 187 N.Y. 376, 80 N.E. 201.

Counsel for defendant depend heavily upon the doctrine declared in Gotch v. K. & B. Packing Co., 93 Colo. 276, 25 P.2d 719, 89 A.L.R. 753, and in Fitzpatrick v. Glass Mfg. Co., 61 N.J.L. 378, 39 A. 675. The harsh, inhumanitarian, unsound reasoning of these cases is expressly disapproved. Many cases cited by defendant's attorneys are readily distinguishable from the instant case, and are not opposed to the position taken by this court. A discussion of them would lengthen this opinion unnecessarily. As previously stated, the Tennessee law governs the decision of this case.

In conclusion, it is found that (1) the preponderance of the evidence here proves that plaintiff's intestate was an express invitee upon the premises where he was killed as a direct and proximate result of the defendant company's negligence; (2) the employee of the defendant who invited him, in doing so, was acting within the scope of his apparent authority; and the deceased entered upon the premises upon a mission of mutual benefit to plaintiff's intestate and the defendant company, and was therefore an implied as well as an express invitee.

The motions for a new trial and for a directed verdict are overruled.