[Civ. No. 5476.   Third Appellate District.—April 24, 1936.]

DAVE BARTLETT, Respondent, v. A. B. JACKSON et al., Appellants.

Redman, Alexander & Bacon, Rutledge & Rutledge and Herbert Chamberlain for Appellants.

E. Vayne Miller and Ralph O. Marron for Respondent.

THOMPSON, J.—The defendants have appealed from a judgment which was rendered against them in a suit for injuries sustained by the plaintiff while riding as a guest in

their automobile. The appellants assert that the complaint fails to state facts sufficient to constitute wilful misconduct on their part, and that the findings and judgment are not supported by the evidence.

The complaint fails to state facts sufficient to constitute a cause of action in behalf of a guest on the ground of wilful misconduct under the provisions of section 141¾ of the California Vehicle Act. The complaint merely alleges that: "As a result of the defendant's wilful misconduct in the operation of the aforedescribed International truck and trailer, the plaintiff was thrown with great force . . . " and injured. No facts are alleged which are deemed to have constituted wilful misconduct.

To this complaint the defendants demurred on the ground that it fails to state facts sufficient to constitute a cause of action, and that it is uncertain for the reason that it cannot be determined "wherein or in what respect said defendant wilfully misconducted himself". The demurrer was overruled.

In the case of *Norton* v. *Puter,* 138 Cal. App. 253, 258 [32 Pac. (2d) 172], it is said:

"Wilful misconduct depends upon the facts of a particular case, and necessarily involves deliberate, intentional or wanton conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, that danger is likely to result therefrom."

We are cited to no authority in this state which holds that a complaint which is based on wilful misconduct, and which merely alleges in general language that the defendant was guilty of wilful misconduct in the operation of his automobile, without reciting any specific facts upon which that charge is based is sufficient as against a special demurrer. In the case of *Helme* v. *Western Milling Co.,* 43 Cal. App. 416 [185 Pac. 510], it is said:

" 'Wilful misconduct' means something different from and more than negligence, however gross. . . . The mere failure to perform a statutory duty is not, alone, wilful misconduct."

In the case of *Nichols* v. *Smith,* 136 Cal. App. 272 [28 Pac. (2d) 693], in overruling the judgment, based on a complaint which merely alleged that the defendant was guilty of gross negligence, without reciting any facts in support thereof, the District Court of Appeal properly held that the language

which was used in a similar automobile damage case based on gross negligence, entitled *Malone* v. *Clemow*, 111 Cal. App. 13, 19 [295 Pac. 70], wherein it is said that "the rule is also well settled that negligence may be pleaded in general terms" was mere *dictum*. The Nichols case held that it is necessary to allege specific facts constituting the alleged gross negligence. In the Malone case the complaint actually alleged the specific facts upon which the charge of gross negligence was based. The court there said in that regard:

"In the cases at bar, the amended complaints have specified the particular acts of negligence relied upon, and have charged that these particular acts were done in a grossly negligent manner."

If it be necessary to allege in a complaint specific acts or facts which are deemed to constitute gross negligence, how much more essential it is to allege particular facts upon which one is charged with wilful misconduct, for as the court said in the Malone case, *supra,* wilful misconduct is not necessarily negligence at all. It means "something different from and more than negligence, however gross".

In the case of *Harrison* v. *Formby*, 225 Ala. 260 [142 So. 572], a complaint was held to be fatally defective which failed to allege specific facts constituting wantonness in the operation of an automobile. The language of that complaint was almost identical with the challenged statements of the complaint in this case. It was there charged that the defendant did "wantonly cause or wantonly allow an automobile truck to collide with an automobile in which the plaintiff was riding, thereby proximately causing the injuries and damages complained of".

We are of the opinion the court erred in overruling the special demurrer to the complaint, for the reason that it is necessary to specify the particular acts upon which the wilful misconduct of a person is charged.

In a careful review of the entire record in this case, we are persuaded the findings and judgment are not sustained by the evidence. We are impelled to hold that the facts of this case do not constitute wilful misconduct.

The court therefore erroneously found that:

"The defendant Delbert Cage did then and there wilfully misconduct himself in the operation of said International truck and that he did intentionally and with knowledge that

said acts of wilful misconduct would result in probable injury to the plaintiff, and that he did wilfully and intentionally and with knowledge of probable injury to the plaintiff drive and operate said International truck over into the western half of the highway'', etc.

The evidence shows without conflict that the plaintiff was picked up on the highway near Arbuckle on the afternoon of May 31, 1933, by Delbert Cage, the driver of the defendant Johnson's International truck. He became a guest on that journey, for he rode either at his own request or by the invitation of the driver, without pay. He was very tired and promptly lay down on the cushion of the front seat and went to sleep. He knew nothing of the collision, for he did not awake until he found himself in the hospital after the accident occurred. Accepting the testimony of Alvah Leverett, a stranger to the transaction, which is most favorable to the plaintiff, with no evidence to the contrary, it appears that Cage was driving his truck northerly along a twenty-foot highway about a mile and a half south of Williams, when he overtook and passed Leverett's machine, driving at the rate of twenty-five miles an hour. Cage returned to his proper side of the highway after passing the machine of Leverett. He then, almost immediately, drove on to the wrong side of the highway so far that his outer wheels ran on to the dirt shoulder on the westerly side thereof. At that instant Leverett saw a Chevrolet truck approaching from the north on the westerly side of the highway at a distance of two or three hundred yards from the Cage machine. When the Chevrolet machine reached a point about seventy-five yards from the Cage truck, it suddenly turned to the easterly side of the highway to avoid a collision. Almost at the same instant the Cage truck also suddenly turned back toward its proper side of the concrete. There is evidence that both machines may have changed their course from the right to the wrong side of the highway twice in an effort to avoid the collision which seemed inevitable. The collision occurred on the east side of the concrete, or possibly both cars overlapped the central white line when they collided.

Mr. Cage testified that the plaintiff was fast asleep on the seat by his side, and that his head had slipped from the cushion and was hanging downward; that he reached over and pulled his head back on to the cushion, during which

performance his automobile veered off on to the wrong side of the highway, and that when he looked up and saw the approaching machine he promptly pulled his truck back to his proper side of the roadway at the very time the driver of the Chevrolet car turned in the same direction and the collision occurred. Mr. Meckfessel, who rode in the Leverett machine which had just been passed by the Cage car, testified in that regard: ''I think they both just about turned together. He pulled over and then Cage hit him—pulled over too, trying to get back on his side.''

Cage testified that the position of the plaintiff interfered with his driving. There is no evidence of circumstances in conflict with this evidence as to the cause of the accident. There is no evidence of drunkenness on the part of Cage, or any other circumstance from which it may be inferred that he deliberately, purposely or wilfully drove his truck over onto the wrong side of the highway into the pathway of the approaching vehicle. Cage admits that he saw the approaching car before he lifted the plaintiff's head back on to the cushion. He was driving at a moderate rate of speed. The highway was level and straight. No other vehicles were in sight.

The preceding facts furnish no evidence to support the assumption that Cage deliberately, intentionally, wantonly or with knowledge that a collision was likely to occur, purposely drove his truck on to the wrong side of the highway, or that he turned his machine back to his proper side of the concrete with any such motive or purpose. It may have been negligent for Cage to have attempted to change the position of the plaintiff's head at that critical time, or it may even have constituted gross negligence for him to have done so, but certainly it was not a wilful or deliberate act on his part. Nothing in the manner in which he had been previously operating his truck lends support to the assumption that he acted wilfully. It was a negligent and deplorable act, but the facts do not constitute wilful misconduct. In fact, the evidence indicates just the contrary, that the act was not wilful or deliberate. The findings and judgment are therefore not supported by the evidence.

The judgment is reversed, and the court is directed to render judgment for the defendants.

Steel, J., *pro tem.*, and Pullen, P. J., concurred.